IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GEORGE MONKHOUSE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-4125 |
| | § | |
| STANLEY ASSOCIATES, INC. SHORT TERM DISABILITY INCOME PLAN FOR THE EMPLOYEES OF STANLEY ASSOCIATES, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending is Plaintiff George Monkhouse's Motion to Remand (Document No. 6). After carefully considering the motion, response, reply, and the applicable law, the Court concludes that the case should be remanded.

## I. Background

Plaintiff George Monkhouse ("Plaintiff") filed this action in the 506th Judicial District Court of Grimes County, Texas, alleging that his employer, Stanley Associates Inc. ("Defendant"), has failed to provide disability benefits pursuant to its Short Term Disability Income Plan ("STD Plan").[1] Defendant removed the case

[1] The Defendant named in the caption of Plaintiff's Original Petition is "Stanley Associates, Inc. Short Term Disability Income Plan for the Employees of Stanley Associates, Inc.," but the case was removed by "Defendant Stanley Associates, Inc." Document No. 1 at 1 & ex. B.

to this Court, asserting that Plaintiff's claim is completely preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* According to Defendant, its STD Plan is an "employee welfare benefit plan" covered by ERISA, 29 U.S.C. § 1002(1), and it has held out the plan to its employees and the government as such. Plaintiff moves to remand, contending that Defendant's STD Plan is not an "employee welfare benefit plan" but rather an exempt payroll practice under Department of Labor regulation 29 C.F.R. § 2510.3-1(b)(2).

## II. Motion to Remand

Cases filed in state court which arise under the "Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). "[W]hen faced with a motion to remand, it is the defendant's burden to establish the existence of federal jurisdiction over the controversy." Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 397 (5th Cir. 1998). Any doubt as to the propriety of the removal is to be resolved in favor of remand. *See* Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000); Walters v. Grow Group, Inc., 907 F. Supp. 1030, 1032 (S.D. Tex. 1995) (Harmon, J.).

When a plaintiff's state law claims are completely preempted by federal law, the plaintiff's claims arise under federal law,

thereby permitting removal. *See* Aetna Health Inc. v. Davila, 124 S. Ct. 2488, 2494 (2004); Metro. Life Ins. Co. v. Taylor, 107 S. Ct. 1542, 1546 (1987). State law claims, regardless of how artfully pleaded, that fall within the scope of ERISA's civil enforcement provision, section 502(a), 29 U.S.C. § 1132(a), are completely preempted by ERISA. *See* Aetna, 124 S. Ct. at 2495; Metro. Life, 107 S. Ct. at 1546-48; Copling v. The Container Store, Inc., 174 F.3d 590, 594 (5th Cir. 1999) *overruled on other grounds by* Arana v. Ochsner Health Plan, 338 F.3d 433, 440 n.11 (5th Cir. 2003) (*en banc*). Complete preemption creates federal removal jurisdiction; that is, state law claims covered by ERISA section 502(a) are "recharacterized" as claims "arising under" federal law and are thus removable to federal court.[2] Aetna, 124 S. Ct. at 2495-96; Metro. Life, 107 S. Ct. at 1547; McClelland v. Gronwaldt, 155 F.3d 507, 516-17 (5th Cir. 1998) *overruled in part by* Arana, 338 F.3d at 440 n.11.

---

[2] ERISA's other preemption provision, section 514(a), 29 U.S.C. § 1144(a), provides for ordinary *conflict* preemption of state laws that "relate to" any employee welfare benefit plan. State law claims that fall outside section 502(a), even though preempted by section 514, follow the well-pleaded complaint rule *and do not confer original or removal jurisdiction*. *See* Franchise Tax Bd. of the State of Cal. v. Const. Laborers Vacation Trust, 103 S. Ct. 2841, 2853-55 (1983); Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 337 (5th Cir. 1999) ("When the doctrine of complete preemption does not apply, but the plaintiff's state law claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the [§ 514] preemption issue can be addressed and resolved.").

1. Whether ERISA's Plain Language Covers Disability Plans like Defendant's

Defendant first asserts that Plaintiff's argument that the STD Plan is not an employee welfare benefit plan under ERISA "is contrary to the plain meaning of the statute."[3]

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of sickness . . . [or] disability.

29 U.S.C. § 1002(1). The "payroll practice" exemption at issue provides that "the terms 'employee welfare benefit plan' and 'welfare plan' shall not include--

> Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons.

29 C.F.R. § 2510.3-1(b)(2). Defendant argues that its STD Plan "falls squarely within" ERISA's definition of an employee welfare benefit plan because "[i]t is a benefits plan established by [Defendant] to provide eligible employees with up to 13 weeks of

[3] Document No. 8 at 5.

short-term income protection in the event of a covered disability."[4]

"The precise coverage of ERISA is not clearly set forth in the Act." Mass. v. Morash, 109 S. Ct. 1668, 1672 (1989). The appropriate inquiry is not whether the STD Plan falls within the "broadly worded" and "unhelpful text" of section 1002(1), *see* Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 117 S. Ct. 832, 837 (1997), but whether the plan is exempt from section 1002(1) by the payroll practices regulations. *See* Bassiri v. Xerox Corp., 463 F.3d 927, 929 (9th Cir. 2006) (stating that although Xerox's long-term disability Plan was covered by the broad scope of section 1002(1), the principal question was "whether Xerox's LTD Plan is a 'payroll practice' exempted from ERISA's coverage under Department of Labor regulations implementing the statute"); Stern v. IBM Corp., 326 F.3d 1367, 1373 (11th Cir. 2003) (stating that the issue was "when a program would clearly qualify as an ERISA plan *but for* its specific exemption by a reasonably justified regulation"); McMahon v. Digital Equip. Corp., 162 F.3d 28, 36 (1st Cir. 1998) ("[N]ot all plans that fall within the literal definition in § 1002(1) are included within the scope of ERISA. Regulations promulgated by the Secretary of Labor provide that the term 'employee welfare benefit plan' excludes certain enumerated 'payroll practices' . . . .").

---

[4] Document No. 8 at 5.

2. Validity of 29 C.F.R. § 2510.3-1(b)(2)

Defendant makes a related argument that "because the [Department of Labor] regulation upon which [Plaintiff] relies is contrary to the plain meaning of ERISA, it is also invalid under Chevron USA, Inc. v. Natural Resources Defense Counsel, Inc."[5] 104 S. Ct. 2778 (1984). In Chevron USA, the Supreme Court held that "[w]hen a court reviews an agency's construction of the statute which it administers," it must first determine "whether Congress has directly spoken to the precise question at issue." Id. at 2781. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 2781-82. Defendant cites no cases holding that Congress *unambiguously* expressed its intent for ERISA to cover self-funded STD Plans in 29 U.S.C. § 1002(1), nor has the court found any. As mentioned, the Supreme Court has noted that section 1002(1)'s language is "unhelpful," Dillingham, 117 S. Ct. at 837, and that "[t]he precise coverage of ERISA is not set forth clearly in the Act." Morash, 109 S. Ct. at 1672; *see also* Cal. Hosp. Ass'n v. Henning, 770 F.2d 856, 859 (9th Cir. 1985) ("The term[] 'employee benefit plan' . . . [has] no precise and immutable meaning that excludes the construction adopted by the [payroll practices]

[5] Document No. 8 at 7.

regulation.”). In Morash, the Supreme Court unanimously found that a related payroll practices regulation, 29 C.F.R. § 2510.3-1(b)(3), which exempted payments of compensation from an employer’s general assets for vacation days, was a valid regulation. Morash, 109 S. Ct. at 1671-75. Defendant has not given a persuasive reason why 29 C.F.R. § 2510.3-1(b)(2) should be treated differently under the Chevron USA test. Indeed, cases expressly addressing this question hold that 29 C.F.R. § 2510.3-1(b)(2) *is* a valid exercise of the Labor Secretary’s authority. *See* Norberry v. Life Ins. Co. of N. Am. (*Norberry II*), No. 3:07-1268, 2009 WL 259371, at *9-10 (M.D. Tenn. Feb. 4, 2009); Laney v. Independence Blue Cross, No. Civ.A. 04-1822, 2006 WL 724559, at *3 (E.D. Pa. March 15, 2006) (“In line with Morash and the other circuits facing this question, this court concludes that plans such as IBC’s Program have been properly excepted from ERISA coverage under 29 C.F.R. § 2510.3-1(b)(2).”). Thus, Defendant’s challenge to the Secretary’s authority to promulgate 29 C.F.R. § 2510.3-1(b)(2) lacks merit.

3. Whether Defendant’s STD Plan is a Payroll Practice Under 29 C.F.R. 2510.3-1(b)(2)

Defendant’s STD Plan fits squarely within 29 C.F.R. § 2510.3-1(b)(2). First, the STD Plan dictates that qualifying employees will receive “60% of [their] weekly Covered Earnings” for

the period of time they are unable to work due to the disability,[6] which satisfies the requirement that Defendant must pay Plaintiff's "normal compensation" as the benefit; the Department of Labor interprets "normal compensation" in § 2510.3-1(b)(2) to include payments of less than full salary. *See, e.g.*, Bassiri, 463 F.3d at 930-33 & n.2 (surveying Department of Labor opinion letters, which are entitled to deference, and concluding that Xerox's long-term disability plan which provided 60 percent of employee's usual salary provided "normal compensation" under § 2510.3-1(b)(2)); Butler v. Bank of Am., No. 3:06-CV-262-B, 2008 WL 1848426, at *2-3 (N.D. Tex. April 21, 2008) (listing Department of Labor opinions and cases from other circuits and finding that payment of less than 100 percent of an employee's salary is sufficient to constitute "normal compensation" under § 2510.3-1(b)(2)).  Second, it is undisputed that payments from the STD Plan come from Defendant's general assets.  Finally, payments made pursuant to the STD Plan are "on account of periods of time during which the employee is physically or mentally unable to perform his or her duties."[7]

---

[6] Document No. 8, ex. B § 1.7.  "Covered Earnings means your annual wage or salary as reported by the Employer for work performed for the Employer as in effect just prior to the date Disability begins." Id., ex. B § 1.5.

[7] Id., ex. B § 1.3 ("You are considered Disabled if, solely because of a covered Injury or Sickness, you are: 1. unable to perform all the material duties of your Regular Occupation, and 2. unable to earn 60% or more of your Covered Earnings from working in your Regular Occupation.").

Thus, Defendant's STD Plan falls within the terms of 29 C.F.R. § 2510.3-1(b)(2). *See, e.g.*, Langley v. DaimlerChrysler Corp., 502 F.3d 475, 479 (6th Cir. 2007) ("Langley does not dispute that DaimlerChrysler made [Disability Absence Plan] payments entirely out of its general assets. Nor does she assert that recipients received anything other than "normal" compensation under the plan. Accordingly, [DaimlerChrysler's Disability Absence Plan] falls squarely within the plain meaning of a payroll practice."); Stern, 326 F.3d at 1371 ("The IBM Program fits within the express terms of the Secretary's payroll practices regulation. It pays out of IBM's general assets an employee's normal compensation during periods when the employee is physically or mentally unable to work."); Norberry v. Life Ins. Co. of N. Am. (*Norberry I*), No. 3:07-1268, 2008 WL 5170404, at *6 (M.D. Tenn. Dec. 10, 2008) (finding employer's self-funded short-term disability plan exempt from ERISA by 29 C.F.R. § 2510.3-1(b)(2)); Butler, 2008 WL 1848426, at *2-3 (finding exempt under 29 C.F.R. § 2510.3-1(b)(2) the employer's STD Policy that paid a minimum of 75 percent of employees' base salaries out of the company's general assets when employees were unable to perform their jobs for medical reasons); Laney, 2006 WL 724559, at *3 (finding employer's self-funded short-term disability plan exempt from ERISA by 29 C.F.R. § 2510.3-1(b)(2)).

4. Whether Defendant's STD Plan is Governed by ERISA Because It Held the Plan Out as an ERISA Plan

Defendant alternatively argues that its STD Plan is governed by ERISA because it has treated and held the STD Plan out as an ERISA plan.[8] The Fifth Circuit has not addressed whether an employer's characterization of a plan is a factor when determining if the plan is governed by ERISA. Defendant cites McMahon v. Digital Equipment Corp., 162 F.3d 28 (1st Cir. 1998), for the proposition that a plan is governed by ERISA when an employer "established and treated the plan as an ERISA plan, and also held out the plan to its employees and to the federal government as an ERISA plan."[9] In fact, the holding in McMahon was more limited. In McMahon, the First Circuit held that a company that (1) held its disability plan out to its employees as being governed by ERISA, (2) filed documents with the federal government consistent with the plan's ERISA status, and (3) *partially funded the plan by an insurance contract with a third party insurer and secured it by fidelity bond* was an ERISA plan and not a payroll practice. Id. at 38; *see also* Langley, 502 F.3d at 480 (recognizing these limitations of the holding in McMahon).

The Eleventh Circuit addressed similar facts in Stern v. IBM Corp., 326 F.3d 1367 (11th Cir. 2003). The court rejected IBM's

---

[8] Document No. 8 at 11-13.

[9] Id. at 11.

argument that its short-term disability benefit program was an ERISA plan because it held the plan out as such by annually filing Form 5500 with the Department of Labor and the IRS identifying the Program as an ERISA plan.

> The way in which an employer characterizes its plan may be one factor, among others, in determining ERISA coverage. Nevertheless, even if IBM has treated the Program as an ERISA plan with respect to government filings, its mere labeling of the plan should not determine whether ERISA applies. Allowing this could lead to a form of "regulation shopping." Where, as here, an employer pays an employee's normal compensation for periods of mental or physical disability entirely from its general assets, the program constitutes an exempted payroll practice under 29 C.F.R. § 2510.3-1(b) and not an ERISA plan.

Id. at 1374 (internal citations omitted). The Sixth Circuit has also adopted this reasoning, holding that "mere labeling by a plan sponsor or administrator is not determinative on whether a plan is governed by ERISA." Langley, 502 F.3d at 481.

Here, the Summary Plan Description of Defendant's STD Plan provides, on its cover page, that "[t]he following information constitutes the Summary Plan Description required by the Employee Retirement Income Security Act of 1974."[10] Section 13 of the Summary Plan Description, which is entitled "YOUR RIGHTS AS SET FORTH BY ERISA," provides:

---

[10] Document No. 8, ex. B at 1.

> As a participant in this Plan you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to: Receive Information About Your Plan and Benefits . . . Prudent Actions by Plan Fiduciaries . . . Enforce Your Rights . . . Assistance with Your Questions.[11]

Each of these entitlements is described in turn.[12] Additionally, Defendant's Director of Compensation and Benefits--Pamela Kramer--avers the following:

> Since the inception of the STD Plan in 2005, [Defendant] has filed with the Department of Labor and the Internal Revenue Services the required Annual Return/Report Form 5500. The Annual Return/Report Form 5500 provides detailed information regarding the characteristics and financial operation of all its employee welfare plans, including its STD Plan.[13]

Plaintiff, however, proffers a document from the plan administrator, CIGNA, entitled "Appeal Referral," which reports that Plaintiff's claim was "Non-ERISA."[14] Moreover, by letter dated June 26, 2009, CIGNA's Appeal Claim Manager denied Plaintiff's appeal from CIGNA's prior decision to deny his claim.[15] Notably, this denial letter does not contain a description of Plaintiff's

---

[11] Id., ex. B at 16-17.

[12] Id., ex. B at 16-17.

[13] Id., ex. A at 4 (Kramer Decl.).

[14] Document No. 9, ex. 2.

[15] Id., ex. 1.

right to bring a civil action under ERISA following an adverse benefit determination on appeal, as required by 29 C.F.R. § 2560.503-1(j)(4), which is consistent with CIGNA recognizing Plaintiff's claim as "Non-ERISA."

Even if the Fifth Circuit should consider how an employer characterizes its plan as one factor in determining if ERISA applies, other factors weigh heavily against denying the exemption in this case. For example, unlike McMahon, Defendant has not proffered evidence that it partially funded benefits from any source other than its general assets. 162 F.3d at 38; *see also* Stern, 326 F.3d at 1374 (finding IBM's STD plan was a payroll practice even though it held the plan out to the federal government as an ERISA plan); Langley, 502 F.3d at 481 (finding the employer's plan was a payroll practice and noting that there was no "evidence that the company partially funded benefits from a source other than general assets."); Bilheimer v. Fed. Express Corp., No. 08-80420-CIV, 2009 WL 1324202, at *3 (S.D. Fla. May 13, 2009) (finding that employer's STD Plan that was funded entirely with general assets was a payroll practice regardless of the administrative procedures used for paying claims and of the fact that it treated the plan as being governed by ERISA in Form 5500 filings and in its Summary Annual Reports); *see also* Carmouche v. MEMC Pasadena, Inc., No. 06-2074, 2008 WL 2838474, at *12 n.2 (S.D. Tex. July 21, 2008) (Rosenthal, J.) (noting that the defendant's

self-funded STD plan that was administered by a third party and referred to as ERISA in plan documents was likely an exempt payroll practice (citing Langley, 502 F.3d at 481)). Moreover, even though the Summary Plan Description referred to ERISA, it is uncontested that the third party administrator of the STD Plan--CIGNA--interpreted and regarded the short term disability plan as "non-ERISA" with respect to Plaintiff's short-term disability claim. All doubts must be resolved in favor of remand. *See* Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000); Walters v. Grow Group, Inc., 907 F. Supp. 1030, 1032 (S.D. Tex. 1995) (Harmon, J.). In sum, Defendant has failed to show that ERISA completely preempts Plaintiff's causes of action; thus, removal was improper.

5. Attorney's Fees

Plaintiff also moves for recovery of his attorney's fees incurred from removal. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Attorney's fees are not available if the removing defendants "had objectively reasonable grounds to believe the removal was legally proper." Valdes v. Wal-Mart Stores, Inc., 199 F.3d 290, 293 (5th Cir. 2000). Plaintiff's request for attorney's fees is denied.

## III. Order

For the foregoing reasons, it is

ORDERED that Plaintiff George Monkhouse's Motion to Remand (Document No. 6) is GRANTED, and this case is REMANDED to the 506th Judicial District Court of Grimes County, Texas.

The Clerk will mail a certified copy of this Order to the Clerk of the 506th Judicial District Court of Grimes County, Texas, as required by 28 U.S.C. § 1447, and shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 26th day of April, 2010.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE